NATIONAL LABOR RELATIONS
BOARD, Petitioner,

v.

CUMMER–GRAHAM COMPANY,
Respondent.

No. 17882.

United States Court of Appeals
Fifth Circuit.

June 8, 1960.

Frederick U. Reel, Atty., Thomas J. McDermott, Associate Gen. Counsel, Marcel Mallet-Prevost, Asst. Gen. Counsel, Stuart Rothman, Gen. Counsel, Hans J. Lehmann, Atty., N. L. R. B., Washington, D. C., for petitioner.

J. D. McLaughlin, O. B. Fisher, Fisher, McLaughlin & Harrison, Paris, Tex., for respondent.

Before CAMERON, JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

The National Labor Relations Board seeks the enforcement of its order directing the respondent, Cummer-Graham Company, to cease and desist from refusing to bargain collectively with a union which represented the production and maintenance employees of the respondent at its Beaumont, Texas, plant, and to post a notice of intended compliance. Our question is whether there is substantial evidence on the record considered as a whole to support the Board's finding that the respondent refused to bargain with the union in good faith. 29 U.S.C.A. § 160(e); 5 U.S.C.A. § 1009(e). The attitude with which we should approach our problem in cases of this kind and the manner in which our function of review should be exercised have been set forth in Universal Camera Corporation v. N. L. R. B., 340 U.S. 474, 71 S.Ct. 456, 95 L.Ed. 456. See National Labor Relations Board v. Pittsburgh Steamship Company, 340 U.S. 498, 71 S.Ct. 453, 95 L.Ed. 479; Winter Garden Citrus Products Cooperative v. N. L. R. B., 5 Cir., 1956, 238 F.2d 128; N. L. R. B. v. Fox Manufacturing Co., 5 Cir., 1956, 238 F.2d 211.

There were eleven meetings between union and company representatives. The first was held on March 23, 1956, and the final meeting was held on March 8, 1957. The Board finds a number of instances of the refusal of the respondent to bargain in good faith. The first of these is designated as being the repeated demand of the respondent that

the employees be named as parties to the contract. In several instances at different meetings the representative of the respondent stated that he wanted the contract to show that the employees were parties to the contract. In some instances there were indications that the purpose of the request was to define the employee unit which would be covered by a contract. The representative of the employer was content at one time with a recital in the proposed contract preamble. On another occasion he stated that his proposals would not be insisted upon to the extent of defeating a contract if other terms had been agreed upon. And, it seems, the company's draft of a contract did not contain any provision such as we are discussing. In any event we fail to see that an insistence, if any there was, upon a recital in the contract that it was between employees and union on the one part and the employer on the other is such intransigence as warrants a finding of absence of good faith.

■ Labor organizations, while engaged in collective bargaining, both while the bargain is being negotiated and when it has been agreed upon and is being closed, act in a representative capacity and on behalf of the employees in the bargaining unit. The employees are the real parties in interest. They are, in a very real sense, parties to the agreement whether or not it be so recited. Cf. Textile Workers Union of America v. Lincoln Mills, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972.

■ In N. L. R. B. v. Wooster Division of Borg-Warner Corporation, 356 U.S. 342, 78 S.Ct. 718, 2 L.Ed.2d 823, upon which the Board relies, it was held that a refusal to bargain resulted from the insistence of an employer that its collective bargaining agreement should be with a different union than the union which had been certified as a representative of the employees. No such situation nor one comparable to it is here presented. The Board, in support of its contention that the employer's efforts to procure a recital in the contract that the employees were parties to it, cites the case of N. L. R. B. v. Corsicana Cotton Mills, 5 Cir., 1949, 178 F.2d 344. In that case it was held that a mistaken position of an employer as to what it might insist upon did not show absence of good faith bargaining. A different case is before us. The Act, while requiring the employer to bargain with the certified representative of the employees does not prohibit the addition of other parties. N. L. R. B. v. Wooster Division of Borg-Warner Corporation, supra.

■■ The respondent was insistent that there be a no-strike clause in the contract. The union would not go along with a no-strike provision unless there was an agreement for the arbitration of grievances. The Board, while conceding that an employer may, in furtherance of the purposes of federal legislation, bargain for labor peace by demanding a no-strike provision, the right of an employer to do so is conditioned upon a willingness to include an arbitration clause. This, the Board urges, is what was meant by the statement in Textile Workers Union of America v. Lincoln Mills, supra, that "Plainly the agreement to arbitrate grievance disputes is the quid pro quo for an agreement not to strike." 353 U.S. 448, 455, 77 S.Ct. 912, 917. Before the Court in Lincoln Mills was a collective bargaining agreement containing an arbitration clause. It may be that most no-strike clauses are accompanied by arbitration provisions. It may be too, that if we were entitled to an opinion, which we are not, we would believe that arbitration would normally be a desirable adjunct of a commitment not to strike. These are matters for management and labor to resolve, if they can, at the bargaining table. If they cannot there be decided, then neither Board nor Court can compel an agreement or require a concession. N. L. R. B. v. American National Insurance Co., 343 U.S. 395, 72 S.Ct. 824, 96 L.Ed. 1027; White v. N. L. R. B., 5 Cir., 1958, 255 F.2d 564; N. L. R. B. v. Taormina, 5 Cir., 1957, 244 F.2d 197. We do not think that the Supreme Court held, or intended to hold, in Lincoln Mills, that a no-strike clause and

an arbitration clause were so much one that a persistent demand for the one without acquiescing in the other is a refusal to bargain in good faith.

Contracts containing covenants against strikes are not unknown in the field of labor-management relations. N. L. R. B. v. Norfolk Shipbuilding & Drydock Corporation, 4 Cir., 1952, 195 F.2d 632; Scullin Steel Company, 65 N.L.R.B. 1294. The same contention was made in White v. N. L. R. B., 5 Cir., 1958, 255 F.2d 564, as the Board urges here. In the White case a finding could have been made that the employer insisted upon a contract by which the employees would surrender their right to strike, and giving to management the right to hire, fire and fix wages without a binding arbitration clause. This insistence, it was held, was not a failure to bargain in good faith. The Sixth Circuit, in a like case, reached a like result. N. L. R. B. v. United Clay Mines Corporation, 6 Cir., 1955, 219 F.2d 120. The Board does not urge that insistence on a no-strike clause without an arbitration clause establishes per se a refusal to bargain, but only that it justifies an inference of bad faith. If the respondent had, and we say it did have, the legal right to insist upon the terms of its proposal, we think it cannot be said that the exercise of the right is evidence of bad faith. The War Labor Board, on occasion, refused to require an arbitration provision although a no-strike pledge had been given. Atlas Powder Co., 5 War Lab.Rep. 371.

■ The Board has found that the company insisted that the grievance committee be limited to employees of the plant and that this was a failure to bargain in good faith. The representatives of the employees who participated in the bargaining were not shocked by the proposal and agreed to it in broad principle. One of the union bargainers said "What do you think about this sentence: 'If satisfactory agreement is not reached in the first step the grievance shall be reduced to writing and taken before the Grievance Committee which shall consist of three members who are employees of

the company at its Beaumont, Texas, plant'?" The company wanted amplification of the provision proposed by the union. There was much discussion but it seems, no final determination. It can hardly be said that a company proposal restricting membership on a grievance committee to plant employees was a refusal to bargain in good faith when the proposal met with union approval.

■ The Board finds that the company and its negotiator resorted to delay and procrastination to an extent justifying the inference that the company was refusing to bargain in good faith. It is true that the representative of the company, to a greater extent than the representatives of the union, requested brief delays in order to permit the keeping of other commitments. We think it is unnecessary to review such of the discussions as are shown in the record as to fixing time for meetings. It is enough, we think, to say that the finding that there were delaying tactics amounting to refusal by the Respondent to bargain in good faith is not justified. See N. L. R. B. v. Landis Tool Co., 3 Cir., 1951, 193 F.2d 279.

■■ Finally, the Board insists that the company conducted itself in a manner calculated to arouse hostility and provoke a rupture of negotiations. The Board stresses the comment of the company negotiator made during the discussion regarding procedures before the Grievance Committee that an aggrieved employee could get the Governor of Texas or the President of the United States to speak for him. In looking at this sort of thing it is necessary to keep in mind that the negotiating parties were on a first-name basis with each other. We may dispose of this, we think, by saying that while the statement may have been in extremely bad taste it does not follow that it is evidence of bad faith. The Board seems to conclude that the unwillingness of the company to bargain for wage increases without a disavowal of ability to pay increased wages is evidence of a refusal to bargain in good faith. There are, as must be conceded, other

factors that enter into a wage policy in addition to ability to pay. So also does the Board say that the company's proposal that, as a prerogative of management, it retain the right to discharge without cause, or for any cause except union activity, is evidence of a failure to bargain in good faith. Furthermore, the Board says, if none of these matters standing alone demonstrates a refusal to bargain, the totality of the whole justifies the inference which the Board reached. We do not agree.

A review of the record discloses that a number of bargaining sessions were conducted with a commendable good spirit and lack of acrimony on both sides. Cf. N. L. R. B. v. Corsicana Cotton Mills, supra. Concessions were made, on minor points perhaps, by both sides. That there were fundamental differences which prevented an agreement is apparent. At the last conference of which there is a record before us the almost final observation of the representative of the union was "Give us three cents across the board and we'll talk turkey." This the company did not concede and turkey was not talked.

It is appropriate to repeat here a portion of what was stated in White v. N. L. R. B., supra, where it was said:

"We do not hold that under no possible circumstances can the mere content of various proposals and counter proposals of management and union be sufficient evidence of a want of good faith to justify a holding to that effect." 255 F.2d 564, 569.

We do here hold that there is not substantial evidence on the record as a whole to support the Board's finding that the respondent refused to bargain with the union in good faith. Our decision here is not in conflict with anything which was held and decided in N. L. R. B. v. Herman Sausage Co., 5 Cir., 1960, 275 F.2d 229. The petition for enforcement is

Denied.