Dale GARRISH, et al., Plaintiffs,

v.

UNITED AUTOMOBILE, AEROSPACE, AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, International Union ("UAW"), et al., Defendants.

Civil No. 00–40291.

United States District Court,
E.D. Michigan,
Southern Division.

March 7, 2001.

Harold Dunne, Livonia, MI, for plaintiffs.

Stuart M. Israel, Martens, Ice, Southfield, MI, Andrew M. Kramer, Jones, Day, Cleveland, OH, Samuel C. McKnight, Klimist, McKnight, Southfield, MI, Andrew A. Nickelhoff, Sachs, Waldman, Detroit, MI, for defendants.

### MEMORANDUM OPINION AND ORDER

GADOLA, District Judge.

Before this Court are the following motions: Defendant General Motors' motion to dismiss [docket entry 12]; Defendants UAW and UAW Local 594's motion for summary judgment [docket entry 16]; and Defendants Todd Fante and Gordon Campbell's motion for summary judgment or dismissal [docket entry 20]. The Court held hearings in open court on these motion on February 2, 2001 and March 1, 2001. For the reasons set forth below, the Court grants Defendants Fante and

Campbell's motion to dismiss. The Court denies all other relief Defendants seek at this point.

## I BACKGROUND

Plaintiffs are employees of Defendant General Motors Corporation ("GM") who work at GM's Truck and Bus facility ("the facility") in Pontiac, Michigan. (C.[1] at ¶¶ 4, 8.) Plaintiffs are also members of Defendant United Automobile Aerospace and Agricultural Implement Workers of America, International Union ("UAW") and Defendant Local 594. Plaintiffs purport to represent the interests of 6,000 employees at the facility. Defendant GM builds vehicles. Defendant UAW is a union purporting to represent the interests of workers at GM. Defendant Local 594 is a local union and an element of Defendant UAW. Defendants Todd Fante and Gordon Campbell are members of UAW and employees of GM.

Defendants UAW and GM are parties to a National Collective Bargaining Agreement ("NCBA") The NCBA concerns Plaintiffs' employment rights, including wages, hours of employment, and working conditions. Defendant Local 594 and the facility are parties to a Local Collective Bargaining Agreement ("LCBA"), which allows them to negotiate matters not covered by the NCBA.

This dispute is rooted in a strike over local demands and grievances that Local 594 began, with the UAW's permission, at the facility on April 23, 1997 and that ended on July 21, 1997. Plaintiffs allege that, although all legitimate demands of Local 594 were settled within the strike's first month, Defendant unions fraudulently prolonged the strike for approximately two months for two reasons. First, Plaintiffs allege that the unions sought to obtain roughly $200,000 in "overtime" payments from GM to high-level officials of Local 594. Second, Plaintiffs allege that the unions sought to obtain employment at GM

1. "C." refers to Plaintiffs amended complaint, filed on October 4, 2000 [docket entry 11].

for the relatives of high-level UAW officials.

Plaintiffs further allege that GM ultimately paid $200,000 to Local 594 to be divided among its high-level union representatives. (C. at ¶ 88.) Plaintiffs allege that GM knew this payment was illegal, and that GM nonetheless provided the $200,000 as a means of paying the union leaders to end the strike. (C. at ¶¶ 89, 97.) According to Plaintiffs, at least one member of Local 594's executive board shared in the disbursement of the improperly-obtained $200,000.

Plaintiffs also aver that Local 594 ultimately obtained employment for Defendants Fante and Campbell. Plaintiffs aver that both Mr. Fante and Mr. Campbell were unqualified for the positions for which GM hired them and that hiring them was a violation of the NCBA. Plaintiffs allege that Mr. Campbell is the son of Jay Campbell, chairman of Local 594's bargaining committee (C. at ¶ 50), and that Mr. Fante is the son of a friend of Donny Douglas, who was the UAW's representative during the 1997 strike negotiations at the facility. (C. at ¶ 51.)

Plaintiffs brought suit on August 7, 2000. In their first amended complaint, filed on October 4, 2000, Plaintiffs assert the following "counts" pursuant to the Labor Management Relations Act ("LMRA"), Title III, § 301, 1947, as amended, 29 U.S.C. § 185 [hereinafter " § 301"].

In "count I," Plaintiffs claim that all Defendants colluded in violation of LMRA to violate Plaintiffs' contractual rights under the NCBA by arranging for the hiring of Messrs. Fante and Campbell. (C. at ¶¶ 45–75.)

In "count II," Plaintiffs allege that Defendants UAW and Local 594 committed fraud and collusion in violation of LMRA to extort the $200,000 "overtime" payment from GM. (C. at ¶¶ 76–103.)

In "count III," Plaintiffs aver that Defendants UAW and Local 594, in violation of LMRA, breached the duty fair of representation that they owed Plaintiffs by prolonging the strike in order to obtain employment for Messrs. Fante and Campbell.

■ At the outset of a case such as this, the Court must decide whether a plaintiff has alleged a § 301 suit and, if so, whether that action is a hybrid suit under § 301. *See Jones v. Department Store Employees Union Local 1100,* No. 90–15010, 944 F.2d 908, 1991 WL 181771, at *2 (9th Cir. Sept.18, 1991). The Court must also construe pleadings "so as to do substantial justice." Fed.R.Civ.P. 8(f). The Court promotes substantial justice when it decides lawsuits on their merits, and not on whether a plaintiff has drawn artfully the averments in his pleadings. *Polite v. Casella,* 901 F.Supp. 90, 94 (N.D.N.Y.1995). Toward that end, the Court must strive to ascertain what a plaintiff is attempting to set forth in his pleading. *Id.* (citing *Alexander v. Unification Church of Am.,* 634 F.2d 673, 678 (2d Cir.1980) for the proposition that a plaintiff's mislabeling of counts is immaterial). All that the Court demands of a plaintiff is that he provide "fair notice of what the claim is and the grounds upon which it rests." *Iron Workers' Local No. 25 Pension Fund v. Nyeholt Steel, Inc.,* 946 F.Supp. 514, 517 (E.D.Mich.1996) (Gadola, J.).

■ Construed so as to do substantial justice, the three "counts" that Plaintiffs assert constitute one hybrid cause of action under § 301. This is so because the Court confronts a hybrid cause of action where, as here, "the interrelationship between a union member, his union, and his employer is implicated." *White v. Anchor Motor Freight, Inc.,* 899 F.2d 555, 561 (6th Cir.1990); *see also Carrion v. Enterprise Ass'n Metal Trades Branch Local Union 638,* 227 F.3d 29, 34 (2d Cir.2000); *Duerr v. Minnesota Mining and Mfg. Co.,* 101 F.Supp.2d 1057, 1065 (N.D.Ill.2000). It is common for courts to construe inartfully-drafted complaints as alleging a hybrid cause of action under § 301. *See, e.g., Coleman v. General Mills,* No. 94–3651, 43 F.3d 1471, 1994 WL 696116, at *2 (6th Cir.

Dec.12, 1994); *Adcox v. Teledyne, Inc.*, 21 F.3d 1381, 1386–87 (6th Cir.1994); *Rudnianin v. Kroger Co.*, 770 F.2d 167, No. 82–1763, 1985 WL 13472, at *1 (6th Cir. Jul.12, 1985); *Brown v. UAW*, 682 F.Supp. 901, 904 (E.D.Mich.1987) (Suhrheinrich, J.).

■ A hybrid claim under § 301 has two elements: (1) that the employer violated the terms of a collective-bargaining agreement and (2) that the union breached its duty of fair representation. *Vencl v. International Union of Operating Engineers, Local 18*, 137 F.3d 420, 423 (6th Cir.1998); *Sudderth v. Alreco Metals, Inc.*, 839 F.Supp. 1267, 1272 (W.D.Mich.1993) (citation omitted). These elements cannot stand individually: a plaintiff must prove both violations to succeed against either the union or the employer. *Id.* (citing *Bagsby v. Lewis Bros. Inc.*, 820 F.2d 799, 801 (6th Cir.1987)).

During the hearing of March 1, 2001, Defendant GM and Defendant Local 594 argued that this case should not be construed as hybrid § 301 action because such a suit requires a nexus between a union's breach of the duty of fair representation and an employer's breach of contract. *See generally McKelvin v. E.J. Branch Corp.*, No. 94 C 4104, 1996 WL 54195, at *4 (N.D.Ill. Feb.8, 1996). Here, these Defendants argued, there is no such nexus.

The Court disagrees. Plaintiffs claim that GM breached the NCBA by hiring Messrs. Fante and Campbell only because of the unions' breach of the duty of fair representation; i.e., Plaintiffs argue that GM wrongly hired Defendants Fante and Campbell because the union leaders wrongly would have prolonged a strike had GM not done so. There is thus an inextricable nexus between Plaintiffs' allegations against GM and the unions. Similarly, Plaintiffs tie GM's alleged payment of $200,000 [2] to the union leaders to the unions' allegedly wrongful prolongation of a strike. The Court thus concludes that

there is a connection between the allegations Plaintiffs make against the unions and GM.

Although this case is not a class action, Plaintiffs seek certification as such. Discovery is not yet closed.

## II STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes the district courts to dismiss any complaint that fails "to state a claim upon which relief can be granted." Rule 12(b)(6) affords a defendant an opportunity to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true. In applying the standards under Rule 12(b)(6), the court must presume all well-pleaded factual allegations in the complaint to be true and draw all reasonable inferences from those allegations in favor of the non-moving party. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993). The court need not, however, accord the presumption of truthfulness to any legal conclusions, opinions or deductions, even if they are couched as factual allegations. *Sexton v. Barry*, 233 F.2d 220, 223 (6th Cir.1956). Dismissal for failure to state a claim is disfavored:

> [A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.

*Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

The Court will grant a motion for summary judgment if the evidence demonstrates that there is no genuine issue as to any material fact, and that the movants are entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must read the evidence, and all in-

---

2. It is not entirely clear to the Court, however, that Plaintiffs allege this payment to have

been a breach of contract.

ferences drawn therefrom, in the light most favorable to the non-moving party. *See Smith v. Hudson,* 600 F.2d 60, 63 (6th Cir.1979). "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. The Court's function is not to weigh the evidence and determine the truth of the matters asserted, "but to determine whether there is a genuine issue for trial." *Id.* at 249, 106 S.Ct. 2505. The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

## III DISCUSSION

### A. Statute of Limitations

#### 1. Rule 12(b)(6) Dismissal

■ Defendants GM, Fante, and Campbell argue that the Court must dismiss this case under Rule 12(b)(6) because it is time barred. A six-month statute of limitations applies to hybrid suits under § 301. *DelCostello v. International Bhd. of Teamsters,* 462 U.S. 151, 154–55, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983). That six-month period accrues when a plaintiff knows, or should know through the exercise of due diligence, of the acts that give rise to the cause of action. *Wilson v. International Bhd. of Teamsters,* 83 F.3d 747, 757 (6th Cir.1996). Because the cause of action for a hybrid § 301 claim involves both a demonstration of the union's breach of the duty of fair representation *and* the employer's violation of the collective-bargaining agreement, the statute of limitations for that claim does not begin to accrue until a plaintiff knows, or should know through the exercise of due diligence, of acts that would give rise to the inference *that both of those elements exist. Cf. Dziura v. United States,* 168 F.3d 581, 583 (1st Cir.1999) (quoting 26 C.F.R. § 301.7433–1(g)(2) for the proposition that a suit under the Internal Revenue Code accrues "when the taxpayer has had a reasonable opportunity to discover *all essential elements* of a possible cause of action") (emphasis added); *Cohen v. Daddona,* 76 F.Supp.2d 587, 593 n. 12 (E.D.Pa. 1999) (reasoning that "a civil RICO claim accrues when a plaintiff knew or should have known that the *elements* of a civil cause of action existed") (internal quotation omitted) (emphasis on the plural added). To trigger accrual, in other words, it is not enough that a plaintiff only have reason to know of facts that would support one of the two elements of the claim.

■ This statute of limitations is procedural, not jurisdictional. *Novak v. International Bhd. of Elec. Workers,* No. 94 C 6245, 1995 WL 228999, at *1 (N.D.Ill. Apr.14, 1995) (citing *Allgood v. Elyria United Methodist Home,* 904 F.2d 373, 375–77 (6th Cir.1990)). The Court must therefore apply Rule 12(b)(6) to this case and only dismiss the action as time barred if it appears from the face of the complaint that the statute of limitations prevents this suit. *Id.*

■ On the face of the complaint, Plaintiffs clearly allege that they were unaware of the allegedly-illegal $200,000 payment from GM to the union officials until "late February 2000," which was within six months of their filing of this action. (C. at ¶ 77.) In the complaint, Plaintiffs also aver that "Defendants UAW and Local 594 hid from Plaintiffs the fact they were demanding Defendant GM violate the National CBA by hiring Defendants Campbell and Fante." (C. at ¶ 68.) Although this assertion is less clear, it appears that Plaintiffs were unaware of that salient (alleged) fact until the six month period before they filed their complaint on August 7, 2000. Most significantly, Plaintiffs aver that they were not aware that Defendant unions *prolonged the strike* in order to obtain jobs for Messrs. Fante and Campbell or to obtain illegal payoffs. (C. at ¶¶ 74, 95.) The face of the complaint thus does not show "beyond doubt that the plaintiff[s] can prove no set of facts in

support of [their] claim which would entitle [them] to relief." *Conley*, 355 U.S. at 45–46, 78 S.Ct. 99. The Court therefore denies Defendants' motion to dismiss this suit as time barred under Rule 12(b)(6).

## 2. Summary Judgment under Rule 56

■ Defendants UAW, Local 594, Fante, and Campbell argue that they are entitled to summary judgment because of the statute of limitations. Defendants UAW and Local 594, in particular, support their argument with a plethora of documents that militate toward the conclusion that Plaintiffs knew, or should have known, of both the $200,000 payment and the hiring of Messrs. Fante and Campbell long before February 7, 2000.

Plaintiffs, however, have introduced evidence from which a reasonable jury could conclude that it was not until July, 2000 that at least one of the Plaintiffs knew, or had reason to know, either that the union officials prolonged the strike in order to obtain employment for Messrs. Fante and Campbell *or* that the union leaders maintained the strike so that GM would pay union officials $200,000. Plaintiff Gerald McDonald, to wit, makes both points in his sworn affidavit. He states specifically that he was unaware of either allegation, and implies that he had no reason to be aware of either allegation because (1) "it was never reported at any Local 594 membership meeting" that the strike was prolonged to help Messrs. Fante and Campbell and (2) rumors of the $200,000 payment did not disseminate until a union official admitted to accepting a payment in the summer of 2000. (Aff. of Gerald McDonald, ¶¶ 11, 17–19.)

During the motion hearing on February 2, 2001, Defendants emphasized that their evidence, which consists largely of newsletters published by different factions of Local 594, showed that Plaintiffs, and Mr. McDonald in particular, should have known of the acts giving rise to these allegations well before February 7, 2000. Be that as it may, it is not for this Court to weigh competing evidence. For now, it is sufficient that a reasonable jury could credit the version of events delineated in Mr. McDonald's affidavit. In other words, because competent evidence suggests that Mr. McDonald did not know, or have reason to know, of the predicate allegations of this case until the six-month period before Plaintiffs filed their complaint, sufficient evidence exists to allow a jury to decide that Plaintiff McDonald filed this action within the statute of limitations. *See Wilson*, 83 F.3d at 757.

It is not clear that Plaintiffs have, as yet, adduced evidence that would provide a basis from which a reasonable jury could find that the other Plaintiffs did not know, or have reason to know, of this suit's predicate acts before February 7, 2000. Pursuant to this Court's policy of not granting a motion for summary judgment before the close of discovery, however, the Court denies the motion for summary judgment of Defendants UAW, Local 594, Fante, and Campbell without prejudice. *See McLaren Performance Technologies, Inc. v. Dana Corp.*, 126 F.Supp.2d 468, 470 (E.D.Mich.2000) (Gadola, J.).

## B. Motion to Dismiss of Defendants Fante and Campbell

Plaintiffs seek both monetary and injunctive relief against Defendants Fante and Campbell. The proposed injunctive relief would, in essence, have the Court blacklist Defendants Fante and Campbell from certain jobs at GM.

■ Messrs. Fante and Campbell are not signatories to a collective-bargaining agreement under § 301. The Sixth Circuit has "broadly stated that there is no subject matter jurisdiction over non-signatories to a collective bargaining agreement under § 301." *American Federation of Television and Radio Artists v. WJBK–TV*, 164 F.3d 1004, 1008 n. 5 (6th Cir.1999). Plaintiffs cannot assert, moreover, "§ 301 jurisdiction against individual employees in an action for money damages." *United Food and Commercial Workers Local 951 v. Mulder*, 31 F.3d 365, 370 (6th Cir.1994).

With that in mind, Defendants Fante and Campbell argue that "the complaint should be dismissed as to Fante and Campbell individually to the extent that it seeks monetary damages." [docket entry 20 at 10.] The Court agrees.

Regarding Plaintiffs' proposed injunctive relief against Defendants Fante and Campbell, Plaintiffs have failed to explain why that sort of relief would be a valid exception to the broad rule that "there is no subject matter jurisdiction over non-signatories to a collective bargaining agreement under § 301." During the hearing of March 1, 2001, in fact, Plaintiffs admitted that they knew of no authority in support of the equitable relief that they seek against Defendants Fante and Campbell. The Court likewise knows of no such authority.

Because Plaintiffs have not asserted a valid claim against Defendants Fante or Campbell that would entitle Plaintiffs to either monetary or injunctive relief, the Court grants with prejudice Messrs. Fante and Campbell's motion to dismiss.

All remaining arguments are made solely by Defendant GM in relation to its motion to dismiss.

### C. GM's Modification–of–Bargain Argument

 Defendant GM contends that the claim against it must be dismissed because Plaintiffs have alleged merely that the unions and GM, who were the parties to the contract in question, the NCBA, mutually agreed to modify that contract to include the hiring of Defendants Fante and Campbell. (GM Br. at 7–8.) Because all parties to the NCBA agreed to modify the contract, so goes the argument, no breach-of-contract theory can rest on GM's hiring of Messrs. Fante and Campbell. Plaintiffs make four arguments in their response, none of which deals with this issue. It surprises the Court that Plaintiffs would fail to address this matter. Defendant GM's argument, nonetheless, seems queer.

 When a union is bargaining with management, it acts in a representative capacity, and on behalf, of the workers within the bargaining unit. *See NLRB v. Cummer–Graham Co.*, 279 F.2d 757, 759 (5th Cir.1960) Those employees are, "in a very real sense, parties to the agreement whether or not it be so recited." *Id.* (citing *Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448, 77 S.Ct. 923, 1 L.Ed.2d 972 (1957)). Plaintiffs, who were all within Local 594's bargaining unit, were parties to the NCBA. The Court thus fails to apprehend how the union leaders and GM could, *sub silentio*, modify the written contract to allow for the hiring of Messrs. Fante and Campbell even if those men were ineligible to be hired under the plain terms of the contract. Similarly, the Court fails to see how the unions and GM could silently change the contract to allow for payments to union leaders in return for an end to a strike.

The Court rejects GM's argument that, because all parties assented to modify the contract, there could be no breach of contract.

### D. GM's Argument that the Alleged Breach Could Not Have Caused Damages

 Defendant GM argues that it is entitled to dismissal because the "so-called breach" of contract arising from GM's hiring of Messrs. Fante and Campbell could not have caused damages because it "ended the strike and got everyone back to work." (GM Br. at 8.)

On page twenty-three of their response, Plaintiffs touch on this issue, alleging that "at least two" Plaintiffs suffered damages because, but for the wrongful hiring of Messrs. Fante and Campbell, two of the Plaintiffs would have "been entitled to enter the Vehicle Builders Classification via the Employee–in–Training or apprentice program as allowed by the CBA." (Pl. Resp. at 23.) Defendant GM maintains that the complaint only seeks compensatory damages for "forcing Plaintiffs to remain on strike" and punitive damages for

"causing Plaintiffs to lose wages." (C. at ¶¶ 157–58.)

This is a close call. Liberally construed, however, the complaint alleges that being denied the jobs that wrongly went to Messrs. Fante and Campbell in breach of the NCBA caused "Plaintiffs to lose wages." (C. at ¶ 158.) Although the complaint is not a model of clarity or draftsmanship, it does allege the element of damages necessary to a breach-of-contract theory. The Court thus rejects GM's argument on this point.

### E. GM's Argument that Plaintiffs' Allegations Fail Because the Complaint Fails to Vindicate "Uniquely Personal" Rights

■ Quoting *Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 562, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), GM argues that an employee may bring suit against his employer only where he seeks to vindicate " 'uniquely personal' rights, such as wages, hours, overtime pay, and wrongful discharge." Otherwise, only unions can sue over violations of a collective labor agreement. *Gutierrez v. United Foods, Inc.*, 11 F.3d 556, 559 (5th Cir.1994). Here, GM alleges, Plaintiffs seek only the vindication of collective rights, and there is thus no cause of action under § 301.

Unfortunately, the Supreme Court has not comprehensively defined the term "uniquely personal rights." *Arif v. AT&T Corp.*, 959 F.Supp. 1054, 1057–58 (E.D.Ark.1997). On the face of the complaint, however, Plaintiffs do seek "wages," which is one of the enumerated "uniquely personal rights" mentioned by the Supreme Court. (C. at ¶ 158.) On that ground, the Court denies GM's contention on this point.

### F. GM's Preemption Arguments

#### 1. *Garmon* preemption

■ Defendant GM first argues that the National Labor Relations Act ("NLRA") preempts suits over a breach of good faith in bargaining.

■ "When an activity is arguably subject to § 7 or § 8 of the [NLRA], the States as well as the federal courts must defer to the exclusive competence of the National Labor Relations Board." *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 245, 79 S.Ct. 773, 3 L.Ed.2d 775 (1959). Section 8 of the NLRA requires employers to bargain in good faith "with respect to wages, hours, and other terms and conditions of employment." *Litton Financial Printing Division v. NLRB*, 501 U.S. 190, 198, 111 S.Ct. 2215, 115 L.Ed.2d 177 (1991). At first glance, it therefore seems that the NLRA preempts this suit.

However, the NLRA does not preempt a suit where, as here, "an employee claims that a union has breached the statutory duty of fair representation." *Pile Drivers, Divers, Carpenters, Bridge, Wharf and Dock Builders Local Union v. Northern Calif. Carpenters Regional Council*, 992 F.Supp. 1138, 1143 n. 6 (N.D.Cal.1997) (citing *Breininger v. Sheet Metal Workers Int'l Ass'n*, 493 U.S. 67, 74–80, 110 S.Ct. 424, 107 L.Ed.2d 388 (1989)). In other words, NLRA preemption "does not apply to fair representation suits," which is what we have here. *Id.* The Court therefore rejects this argument.

#### 2. *Machinists* preemption

■ Defendant GM's second preemption argument is that, under the doctrine of *Lodge 76, Int'l Ass'n of Machinists & Aerospace Workers v. Wisconsin Employment Relations Comm'n*, 427 U.S. 132, 144, 96 S.Ct. 2548, 49 L.Ed.2d 396 (1976) ("*Machinists* preemption"), this case is preempted.

■ *Machinists* preemption applies where Congress intended that "certain conduct of private bargaining parties be unregulated." *St. Thomas–St. John Hotel & Tourism Ass'n, Inc. v. United States Virgin Islands*, 218 F.3d 232, 239 (3d Cir. 2000). The "choice of economic weapons" that parties to a collective-bargaining process use, and "the substantive terms to

which the parties" ultimately agree, are areas that Congress intended to be unregulated. *NLRB v. Insurance Agents' Int'l Union,* 361 U.S. 477, 490, 80 S.Ct. 419, 4 L.Ed.2d 454 (1960).

Defendant GM has not shown, however, how the Court's adjudication of this suit would affect either those areas or any other subject that Congress intended to be left unregulated. It seems to the Court that this case is not about the substantive terms of a collective-bargaining agreement or the economic weapons that the parties employed. Instead, this action is about whether Defendant unions represented their members faithfully, and whether, because of the unions' alleged breach of the duty of fair representation, GM breached a collective bargaining agreement. The Court holds that *Machinists* preemption[3] does not apply here.

## IV CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that the motion to dismiss by Defendants Fante and Campbell [docket entry 20] is **GRANTED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that the motion to dismiss of Defendant General Motors [docket entry 12] is **DENIED.**

**IT IS FURTHER ORDERED** that the motion for summary judgment of Defendants UAW and UAW Local 594 [docket entry 16] is **DENIED WITHOUT PREJUDICE.**

**SO ORDERED.**

---

**3.** It is not clear, moreover, that *Machinists* preemption even pertains to a federal action, although dicta in *Golden State Transit v. City of Los Angeles,* 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989) intimates that it does. *See Phoenix Engineering, Inc. v. MK–Ferguson of Oak Ridge Co.,* 966 F.2d 1513, 1520–21 (6th Cir.1992).