RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 05a0328p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

DALE GARRISH, et al.,

                  *Plaintiffs-Appellants,*

      *v.*

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE, AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA; LOCAL 594 INTERNATIONAL
UNION, UNITED AUTOMOBILE, AEROSPACE, AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA;
and GENERAL MOTORS CORPORATION,

                 *Defendants-Appellees.*

No. 03-2468

---

Appeal from the United States District Court
for the Eastern District of Michigan at Flint.
No. 00-40291—Paul V. Gadola, District Judge.

Argued: June 8, 2005

Decided and Filed: August 5, 2005

Before: SILER and GIBBONS, Circuit Judges; WILLIAMS, District Judge.[*]

---

## COUNSEL

**ARGUED:** Harold Dunne, Livonia, Michigan, Steven B. Potter, DINN, HOCHMAN, POTTER
& LEVY, Cleveland, Ohio, for Appellants. Samuel C. McKnight, KLIMIST, McKNIGHT, SALE,
McCLOW & CANZANO, Southfield, Michigan, Stuart M. Israel, MARTENS, ICE, KLASS,
LEGGHIO & ISRAEL, Royal Oak, Michigan, for Appellees. **ON BRIEF:** Harold Dunne, Livonia,
Michigan, Steven B. Potter, DINN, HOCHMAN, POTTER & LEVY, Cleveland, Ohio, for
Appellants. Samuel C. McKnight, KLIMIST, McKNIGHT, SALE, McCLOW & CANZANO,
Southfield, Michigan, Stuart M. Israel, MARTENS, ICE, KLASS, LEGGHIO & ISRAEL, Royal
Oak, Michigan, Andrew M. Kramer, JONES DAY, Washington, D.C., for Appellees.

---

[*]The Honorable Glen M. Williams, United States District Judge for the Western District of Virginia, sitting by
designation.

1

---

## OPINION

---

SILER, Circuit Judge.  In this action brought under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, Plaintiffs Dale Garrish, *et al.*,[1] appeal the district court's grant of summary judgment to Defendants International Union, United Automobile, Aerospace, and Agricultural Implement Workers of America ("UAW), its affiliated Local 594 ("Local 594"), and General Motors Corporation ("GMC").  The district court concluded that Plaintiffs' action was barred by the statute of limitations because they failed to timely bring their claims.  Having concluded that Plaintiffs' allegations are untimely and fail to state a cause of action, we **AFFIRM**.

## BACKGROUND

Plaintiffs are GMC employees who work in its Pontiac, Michigan Facility and members of UAW and Local 594.[2]  GMC and UAW are parties to a National Collective Bargaining Agreement ("NCBA"), while Local 594 and the Facility are parties to a Local Collective Bargaining Agreement ("LCBA").  These two collective bargaining agreements govern the terms and conditions of Plaintiffs' employment. The NCBA specifically governs employment rights, including wages, hours of employment, and working conditions.  The LCBA permits its parties to negotiate those matters not covered by the NCBA.

In early 1997, Local 594's Shop Committee renegotiated the LCBA between GMC management and the Facility.  Jay Campbell was the Shop Committee Chairman in charge of the renegotiation and was assisted by Donny Douglas, a UAW International Representative assigned to UAW's GMC Department.  These 1997 negotiations pertained to the settlement of specific written demands and grievances immaterial to this appeal.  On April 23, 1997, Local 594's members began a strike at the Facility over these unresolved demands and grievances.  This strike lasted eighty-seven days, finally ending in July 1997.  Thereafter, Plaintiffs asserted that although GMC met Local 594's demands within the strike's first month, the union fraudulently prolonged the strike for two more months.  Plaintiffs claimed that the union extended the strike to (1) require GMC to hire Gordon Campbell (Jay Campbell's son) and Todd Fante (a friend of Donny Douglas's son) and (2) obtain approximately $200,000 in payoffs from GMC to Local 594's upper-level officials.

When the strike began Gordon Campbell and Fante were neither GMC employees nor union members.  On August 4, 1997, GMC hired Gordon Campbell and Fante as journeymen vehicle builders, i.e., in skilled trade positions.  Pursuant to the NCBA, Plaintiffs insisted that the only way a non-GMC individual can be hired as a journeyman in a skilled trades classification is through either having become a journeyman by way of an apprentice program or having gained eight years of experience in that skilled trade.  On August 19, 1997, Plaintiffs challenged the credentials of all new hires and demanded a complete investigation into Gordon Campbell's and Fante's credentials.  On August 29, 1997, two additional grievances were charged against Gordon Campbell and Fante, again challenging their credentials and claiming that they were wrongfully hired during the strike.[3]

---

[1] As there are 140 plaintiffs, they are collectively referred to as "Plaintiffs."  The four lead plaintiffs (and only fact witnesses) in this case are Dale Garrish, Gerald McDonald, Gene Austin, and Janice Austin.

[2] The "union" refers to both the UAW and Local 594.

[3] Gordon Campbell and Fante are not parties to this appeal.  *See Garrish v. Int'l Union, UAW*, 133 F. Supp. 2d 959, 967 (E.D. Mich. 2001).

All grievances against Gordon Campbell and Fante, however, were withdrawn by Skilled Trades Zoneman William Coffey in February 1999. On February 22, 1999, Garrish and other members of Local 594 (including some Plaintiffs) appealed the withdrawal of the grievances. On March 30, 1999, Plaintiffs' appeal was held "to be filed in an untimely manner in accordance with Article #33 of the [UAW] International Constitution." On April 21, 1999, Garrish protested to Jay Campbell that the appeal was timely and must be heard. Jay Campbell never responded, so Garrish filed his appeal with the membership of Local 594. Although again considered untimely, on February 1, 2000, the membership ultimately concluded that the appeal was timely filed. Plaintiffs were very concerned that any internal appeal would be futile – Garrish opined that his "appeal has been delayed literally years under the guise of untimeliness."

Ultimately, on August 7, 2000, Plaintiffs filed this action against Defendants pursuant to § 301 of the LMRA, as amended 29 U.S.C. § 185, for breach of contract and the duty of fair representation. Plaintiffs sought the removal of Gordon Campbell and Fante from their skilled trade positions, as well as compensatory damages in lost wages for 5,000 employees during the prolonged strike and punitive damages from all Defendants. Plaintiffs also alleged that Local 594 extended the strike two more months than necessary to force GMC to pay off upper-level Local 594 officials. In the meantime, GMC determined that under the NCBA only the UAW, and not any local union affiliate, may demand reinstatement of a grievance. Therefore, GMC concluded that Local 594's decision to withdraw the grievances challenging these two employees was reasonable and Local 594 was correct in deciding that an arbitrator would not uphold the grievance. While Garrish was advised that he could appeal this decision under Article 33 of the UAW Constitution, he (and other Plaintiffs) still did not believe that the UAW would properly consider an appeal.

After many other instances of procedural wrangling and several years after the grievances were originally filed, the district court granted Defendants' motion for summary judgment. It concluded that Plaintiffs' claims were barred by the statute of limitations because they failed to timely file their complaint.[4]

## DISCUSSION

We review the district court's grant of summary judgment *de novo*. *Lautermilch v. Findlay City Sch.*, 314 F.3d 271, 274 (6th Cir. 2003). "Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.*; *see* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). All evidence is viewed in the light most favorable to Plaintiffs. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"A hybrid § 301 suit implicates the interrelationship among a union member, his union, and his employer." *Vencl v. Int'l Union of Operating Eng'rs, Local 18*, 137 F.3d 420, 424 (6th Cir. 1998) (citation omitted). Jurisdiction arises under § 301 because Plaintiffs alleged breaches of the NCBA. *See id.* "To recover against a union under § 301, the union member must prove both (1) that the employer breached the collective bargaining agreement and (2) that the union breached its duty of fair representation." *Id.* (citation omitted). If both prongs are not satisfied, Plaintiffs cannot succeed against any Defendant. *See id.*; *Bagsby v. Lewis Bros. of Tennessee*, 820 F.2d 799, 801 (6th Cir. 1987).

A six-month statute of limitations applies to Plaintiffs' hybrid § 301 action. *See Martin v. Lake County Sewer Co.*, 269 F.3d 673, 677 (6th Cir. 2001) (citing *DelCostello v. Int'l Bhd. of*

---

[4]The district court had previously construed Plaintiffs' complaint as a hybrid § 301 cause of action. *See Garrish*, 133 F. Supp. 2d at 963-64. Moreover, Plaintiffs had also been denied class certification. *See Garrish v. Int'l Union, UAW*, 149 F. Supp. 2d 326, 333 (E.D. Mich. 2001).

*Teamsters*, 462 U.S. 151, 169 (1983)). "Such a claim accrues when an employee discovers, or should have discovered with exercise of due diligence, acts giving rise to the cause of action." *Wilson v. Int'l Bhd. of Teamsters*, 83 F.3d 747, 757 (6th Cir. 1996). While "[T]he determination of the accrual date is an objective one: 'the asserted actual knowledge of the plaintiffs is not determinative if they did not act as reasonable persons and, in effect, closed their eyes to evident and objective facts concerning the accrual of their right to sue.'" *See Noble v. Chrysler Motors Corp., Jeep Div.*, 32 F.3d 997, 1000 (6th Cir. 1994). Plaintiffs are "not required to sue on a hybrid claim until . . . [they] reasonably should know that the union has abandoned [their] claim." *Wilson*, 83 F.3d at 757. Plaintiffs filed their complaint on August 7, 2000; accordingly, it was timely filed only if their claims accrued after February 7, 2000. If Plaintiffs' claims accrued before then, their complaint is time-barred unless they did not discover, or could not have discovered through due diligence, that Defendants' acts causing the alleged injuries occurred prior to February 7, 2000.

Plaintiffs allege two counts in their hybrid § 301 claim: (1) GMC breached the NCBA by hiring Gordon Campbell and Fante and the union breached the duty of fair representation by protracting the strike until GMC agreed to hire them; and (2) GMC's purported payoffs to Local 594 officials were connected to the union's extension of the strike.

## 1. The hiring of Gordon Campbell and Todd Fante.

Plaintiffs first argue that their timely pursuit of internal union remedies (beginning with their August 1997 grievances) capable of affording them some relief tolled the statute of limitations. Before bringing a hybrid § 301 claim, an employee "first must exhaust any grievance . . . remedies provided in the collective-bargaining agreement." *Robinson v. Cent. Brass Mfg. Co.*, 987 F.2d 1235, 1239 (6th Cir. 1993). But the statute of limitations period begins to run when a plaintiff knows that the union has withdrawn his grievance. *See Noble*, 32 F.3d at 1001-02. In *Robinson*, 987 F.2d at 1239, this court held that the statute of limitations is not tolled during the time an employee pursues internal union remedies that are completely futile. Instead, "in order for the statute of limitations to be tolled, the internal union appeal must be able to afford [Plaintiffs] *some* relief from [Defendants]. . . . [W]hether to toll the limitations period is a question within the discretion of the district court." *Id.* "We review a district court's decision regarding equitable tolling for an abuse of discretion." *Truitt v. County of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998) (citation omitted). If Plaintiffs attempted in good faith to exhaust their internal union remedies before filing suit in federal district court, the statute of limitations may be tolled. *See Dunleavy v. Local 1617, United Steelworkers of Am.*, 814 F.2d 1087, 1090-91 (6th Cir. 1987).

The record is saturated with evidence that Plaintiffs discovered, or should have discovered through due diligence, Defendants' acts giving rise to this action well before February 7, 2000. For instance, Garrish testified in his September 1997 deposition that Donny Douglas admitted that he delayed the strike's settlement so that Gordon Campbell and Fante would be hired. Garrish also testified that Local 594 kept its members on strike so that these two individuals would be hired. Next, Plaintiffs were aware of a leaflet describing how Douglas maintained that he prolonged the strike to get Gordon Campbell hired. Further, in June 1999, Plaintiff Janice Austin filed an unfair labor practice charge against the union with the National Labor Relations Board. She claimed that Local 594 prolonged the strike so that GMC would hire the union officials' relatives. Plaintiffs filed grievances as to these same employees in August 1997 and acknowledged that they knew the facts surrounding these individuals within days of their hiring date. Garrish expressly testified that "[i]t was always the same thing [during the 1997 strike and negotiations]: the kids and money." Plaintiffs nevertheless contend that the statute of limitations was tolled.

Plaintiffs appealed their August 1997 grievances through February 2002.[5] According to Plaintiffs, all these grievances tolled the statute of limitations since they would provide "some relief." Despite this argument, however, Plaintiffs have repeatedly conceded that any appeal was futile. For instance, Count V of Plaintiffs' first amended complaint is labeled "USE OF DEFENDANT UAW'S APPEAL PROCEDURE WOULD BE FUTILE." Garrish testified that he knew early on that the union would not process his grievance and it would be futile to do so, and he was not surprised and "could have gambled everything" that the UAW would find his appeal untimely because of fraud and collusion between various union and GMC officials.[6]

The district court did not abuse its discretion in determining that the statute of limitations was not tolled because Plaintiffs knew long before February 7, 2000 that all appeals would be completely futile. *Robinson* clearly applies and Plaintiffs' unfounded assertion that the statute of limitations should have been tolled "[s]ince there was some possibility of relief . . . in the internal union remedy" is not supported by the record. While Article 33 of the UAW constitution provides that "[i]t shall be the duty of any individual . . . to exhaust fully the individual['s] remedy and all appeals under this Constitution and the rules of this Union before going to a civil court . . . for redress[,]" Plaintiffs' grievances only pertained to Gordon Campbell and Fante and did not address the underlying purpose of the lawsuit – the recovery of monetary damages. Plaintiffs' first amended complaint reveals that the NCBA does not provide for the 60 days lost wages sought and "Plaintiffs have no administrative remedies in which to recover their 60 days lost wages due to the collusion and fraud of all Defendants on the violation of the [NCBA] regarding [Gordon] Campbell and Fante, and due to the collusion of fraud of Defendants . . . in wrongful payments to union officials."[7] Plaintiffs' grievances that Gordon Campbell and Fante be removed because they were unqualified for skilled trade positions are completely dissimilar to the "heart" of Plaintiffs' action that the union improperly prolonged the strike in order to secure employment for these individuals and payments for Union officials, and that GMC violated the NCBA by acquiescing in these demands in order to settle the strike.

Although Plaintiffs also sought the removal of Gordon Campbell and Fante through this lawsuit, they nonetheless asserted that the other issues could not be resolved through internal union procedures. While the removal of Gordon Campbell and Fante would constitute "some relief," Plaintiffs have made it clear that their pursuit of internal union appeals would have been completely futile. *See Robinson*, 987 F.2d at 1242 ("Tolling the statute of limitations while a claimant pursues *completely* futile internal union remedies does not serve the federal interests discussed in *DelCostello* and *Clayton [v. Int'l Union, UAW*, 451 U.S. 679 (1981)] and is unfair to the defendant."). Moreover, Plaintiffs certainly cannot raise a genuine issue of material fact by relying on evidence that purportedly tolls the statute of limitations yet simultaneously acknowledge it is not

---

[5]These grievances only concerned the hiring of Gordon Campbell and Fante and did not address the purported payoffs.

[6]Garrish subsequently tried to recant his earlier deposition testimony in an affidavit wherein he averred that he "was wrong in [his] belief in 1999 that [his] appeal would not be properly pursued" and explained why he originally thought the UAW would not properly process his appeal. This cannot be used in considering whether summary judgment was proper. *See Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991) ("[I]t is well settled that a plaintiff may not create a factual issue for the purpose of defeating a motion for summary judgment by filing an affidavit contradicting a statement the plaintiff made in a prior deposition.").

[7]In a subsequent affidavit, Garrish again tried to avoid his prior deposition testimony by claiming that he did not learn an appeal would be futile until August 2000, when his appeal was assigned to UAW Vice-President Richard Shoemaker. According to Garrish, Shoemaker would not properly consider Plaintiffs' appeal "since his son was another individual who was hired by GM[C] as a result of the 1997 strike" at the Facility. However, this use of an affidavit is unacceptable, *see Jones*, 939 F.2d at 385, and there is undisputable evidence that Plaintiffs knew long before February 7, 2000 that any appeal would be futile.

even included in the record. Because Plaintiffs knew that no relief was available through an internal process, the statute of limitations was not tolled.[8] *See Darden v. Local 247, Int'l Bhd. of Teamsters*, 103 F.3d 129, 1996 WL 692095, at *2 (6th Cir. 1996) (table) (*per curiam*).

Plaintiffs sought different remedies for different violations: internal union appeals to address the wrongful hire of Gordon Campbell and Fante and a federal civil suit to address the wrongful strike prolongation for lost wages and improper payoffs to union officials. The statute of limitations began to run no later than February 3, 1999, when Plaintiffs' grievances were withdrawn. *See Noble*, 32 F.3d at 1001. Plaintiffs' representations in their first amended complaint and deposition testimony, as well as the disconnect between the internal grievance appeals and this lawsuit, reveal that the district court correctly refused to toll the statute of limitations. Therefore, because Plaintiffs discovered the grounds for their hybrid § 301 action before February 7, 2000, their claim is barred by the six-month statute of limitations.

### 2. The alleged payoff of union officials.

Plaintiffs also argue that a question of fact exists as to when they discovered that the strike was prolonged so GMC would pay off union officials. Garrish insists that he did not learn this until mid-2000, when Local 594 Committeeman Mike Fitch told him that all union committeemen received money at the end of the strike. Despite these declarations in Garrish's subsequent affidavit, the record discloses that he knew in July 1997 that two union officials (Jay Campbell and William Coffey) had "receiv[ed] substantial money grievance settlements." Garrish attempts to resolve these discrepancies by contending that he did not learn *all* committeemen received $5,000 payoffs until July or August 2000.

Summary judgment was appropriate. Allegations of payoffs and strike prolongation began immediately after the 1997 strike ended. Plaintiff Gene Austin, the publisher of union opposition newsletter *The Challenger*, informed fellow union members that he "could no longer sit back and watch as our members were being used as pawns by the officers at the hall to negotiate large settlements for themselves and get family members hired." Gene Austin also agreed during his deposition testimony that he learned in September 1997 that Local 594's negotiators had abused their bargaining power to get large payments for Jay Campbell and William Coffey. Plaintiff Gerald McDonald testified that an inference arose that these payments were improper and unfair because Jay Campbell and Coffey vigorously defended their receipt of these large payments at the strike's conclusion. Furthermore, Garrish testified that, beginning in late 1997, he was familiar with numerous leaflets questioning the validity of these payments and the specific amounts some union officials received. Garrish conceded that he was exposed to literature in 1999 that union officials "absus[ed] the bargaining table" to "get payoffs for union officials and jobs for unqualified relatives[.]"

The voluminous record is replete with examples of Plaintiffs' knowledge of these alleged payoffs years before February 7, 2000. Illustrations include the following: Gene Austin wrote that "[w]hat we do know as a Membership is that some of the top negotiators during our 87 day strike have filled their pockets[.]"; leaflets advised "LEARN HOW TO BARGAIN FOR PERSONAL GAIN, GET YOUR KIDS A GOOD JOB, AND A POCKET FULL OF MONEY TO BOOT. LEARN HOW ABUSE OF POWER CAN WORK FOR YOU AND YOUR FRIENDS[.] INSTRUCTOR JAY 'I'M WORTH MORE' CAMPBELL."; "IT WAS NOT A STRIKE IT WAS A PAYOFF," "Bill Campbell . . . got $60,000. Jay Campbell . . . got $40,000 and his kid an illegal

---

[8]Despite Plaintiffs' contention otherwise, we are not permitted to find "that the *Robinson* rule is unworkable" and "abandon" it. *See Beck v. Haik*, 377 F.3d 624, 635 (6th Cir. 2004) (A "panel of this [c]ourt cannot overrule the decision of another panel.").

job on skilled trades"; and Garrish testified that "[i]t was always the same thing:  the kids and money."  All of this evidence was available at least by 2000.

Moreover, there is no distinction between the terms "some" and "all" so as to create a genuine issue of material fact.  Regardless of any $5,000 payments to Fitch and "all" other committeemen, Plaintiffs knew of these payoffs to other high-level union officials as early as 1997.  *See Ratkosky v. United Transp. Union*, 843 F.2d 869, 873-74 (6th Cir. 1988) (six-month statute of limitations began to run when plaintiffs "knew or should have known at that time that [the union] was unwilling to renegotiate the contract").  It is immaterial whether Garrish allegedly learned in mid-2000 that all committeemen received a payoff; rather, it is paramount that he (and the other Plaintiffs) knew in 1997 that the strike had been prolonged so high-level union officials would receive payoffs.  *See Bernard Schoninger Shopping Ctrs., Ltd. v. J.P.S. Elastomerics, Corp.*, 102 F.3d 1173, 1178-79 (11th Cir. 1997) (first reported series of problems starts statute of limitations running); *Allen v. United Food & Commercial Workers Int'l Union*, 43 F.3d 424, 427-28 (9th Cir. 1994) (plaintiffs knew or should have known of union misconduct when they learned their benefits were effectively eliminated).  Fitch's purported confession to Garrish that "all" committeemen received payoffs only supplemented Plaintiffs' collective knowledge.[9]  This claim is also time-barred.

### 3.  Plaintiffs failed to state a cause of action under § 301.

As an additional rationale for affirmance, two of Plaintiffs' allegations may not be redressed pursuant to § 301.  *See Jasany v. United States Postal Serv.*, 755 F.2d 1244, 1248 n.1 (6th Cir. 1985) (alternative grounds can support district court judgment).  Neither the prolongation of a strike nor the payoffs constitutes a cause of action in the instant appeal – GMC did not breach the NCBA and the union did not breach its duty of fair representation.  During oral argument Plaintiffs' counsel even conceded that there was no case on point providing the relief Plaintiffs seek.  Although the hiring of unqualified employees is a viable claim under § 301, the only available remedy here would be that which Plaintiffs sought in their grievances.  *See Hines v. Anchor Motor Freight, Inc.*, 424 U.S. 554, 570-71 (1976).  However, this claim is time-barred.

**AFFIRMED.**

---

[9]Garrish's claim that he first learned of the alleged payoffs in mid-2000 is contradicted by Plaintiffs' first amended complaint, wherein it is asserted that the "first time Plaintiffs became aware of the possibility that Local 594's officials were obtaining money from GM[C] to which they were not entitled was in the report of the President of Local 594 in the local's newspaper, the 'Champ,' *in late February 2000*" (emphasis added).