# FIRST DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

No. 1D18-3728
_____

JAMES HARRELL,

    Appellant,

    v.

THE RYLAND GROUP, doing
business as Ryland Homes, a
foreign for-profit corporation,

    Appellee.

_____

On appeal from the Circuit Court for Duval County.
Karen K. Cole, Judge.

August 13, 2019

LEWIS, J.

Appellant, James Harrell, appeals the final summary judgment entered in favor of Appellee, The Ryland Group, Inc., d/b/a Ryland Homes, and raises two issues. Appellant argues that the trial court erred in ruling that the statute of repose of section 95.11(3)(c), Florida Statutes (2016), applies. In the alternative, he argues that Appellee failed to establish that the statute of repose had run. We affirm.

## BACKGROUND

In June 2016, Appellant filed against Appellee an amended complaint for damages for injuries he allegedly sustained around

June 6, 2012, when an attic ladder he was climbing at a residential home ("the home") for purposes of repairing a leak collapsed underneath him.[1]  Appellant alleged that Appellee constructed and sold the home prior to June 6, 2012, and was negligent "by failing to ensure that the attic ladder was installed in a secure manner with the appropriate hardware" and "by failing to verify that the ladder was secure before selling the home."  Appellee filed a motion to dismiss, arguing in part that Appellant's claim was barred by the ten-year statute of repose of section 95.11(3)(c), Florida Statutes.  The trial court found that the statute is applicable because an attic ladder is an improvement to real property, but denied the motion upon further finding that it was not clear from the face of the complaint whether the suit was filed before the expiration of the statute of repose.

Appellee then filed a motion for summary judgment, in which it alleged and argued as follows.  In July 2003, Appellee entered into an agreement with the original owners, pursuant to which it was to construct and sell the home to them.  On or around April 30, 2004, the construction of the home was completed and a certificate of occupancy was issued.  By that date, final performance had occurred and final payment had become due for all the contracted-for services related to the construction of the home.  On or around May 7, 2004, Appellee executed a warranty deed conveying title to the home to the original owners, who took actual possession of the home.  As found by the trial court, the installation of the attic ladder was an improvement to real property; thus, section 95.11(3)(c) applies.  The issuance of the certificate of occupancy, the conveyance of the home to the original owners, and the recording of the warranty deed confirm that "all construction activities on the Home were complete, and paid for, and that the Original Owners took actual possession of the Home on [May 7, 2004]."  As such, any claims relating to the home

---

[1] Appellant filed the original complaint in September 2015 against Chandler's Trim, Inc., who he alleged negligently installed the attic ladder without "the proper hardware, including adequate-sized screws" and as to whom he subsequently dismissed the action with prejudice.

expired ten years later, on May 7, 2014, rendering Appellant's claim time barred.

Appellee filed several exhibits in support of its motion. A rider to the agreement between Appellee and the original owners reflects a contract date of July 29, 2003, and an estimated closing date of March and that the contract included optional "[p]ull down attic stairs" for $249. A certificate of occupancy was issued on April 30, 2004, stating that the home "has been completed to the best of our knowledge in compliance with all Building Code and Zoning Regulations applicable therein." A warranty deed reflects that Appellee conveyed the home to the original owners on May 7, 2004. Appellee also filed the affidavit of William Berryhill, the vice-president of the successor corporation by merger to Appellee, in which Berryhill attested in part as follows:

> 5. . . . The issuance of the Certificate of Occupancy indicates that construction of the Home was completed as of April 30, 2004. I know this based on Ryland's standard building procedures and I can also attest to the fact that Ryland's standard building procedures regarding completion of construction and application for the Certificate of Occupancy are common to other production home builders.
>
> 6. To be even more specific, issuance of the Certificate of Occupancy on April 30, 2004 indicates that as of that date final performance of all of the contracted-for services provided by the professional engineer, registered architect, or licensed contractor with respect to the Home were complete. In other words, on April 30, 2004 all of the contract(s) . . . were complete with respect to the Home.
>
> . . . .
>
> 8. Ryland's procedures and protocols would not have permitted the conveyance of the Home as signified by the Warranty Deed without final completion of the contract(s) . . . with respect to the Home and final payment (i.e. closing) delivered to Ryland by the Original Owners.

3

9. The recording of the Warranty Deed on or about May 7, 2004 provides final confirmation that all construction activities on the Home were complete, and paid for, and that the Original Owners took actual possession of the Home on that date.

In his response, Appellant argued that section 95.11(3)(c) does not apply because "the act of fastening a pre-assembled attic ladder does not constitute design, planning or construction of an improvement to real property" and even if the statute were applicable, Appellee failed to establish that the alleged negligent act occurred more than ten years before this action was filed because it has not shown when the ladder was installed. At the motion hearing, Appellant's counsel argued that although the summary judgment evidence indicates that the contract had been completed, it "ignores the fact that sometimes builders have to come back out and do things that they forgot to do as part of that contract. And so, without knowing when this attic ladder was installed, I don't think [Appellee] can carry its burden of establishing when the construction was abandoned or completed."

The trial court entered final summary judgment for Appellee. This appeal followed.

## ANALYSIS

The party moving for summary judgment must establish the absence of any genuine issue of material fact and its entitlement to judgment as a matter of law. *Bradley v. Fort Walton Beach Med. Ctr., Inc.*, 260 So. 3d 1178, 1180 (Fla. 1st DCA 2018). When the movant satisfies this initial burden, the burden shifts to the opposing party to demonstrate the existence of disputed issues of fact by presenting evidence of countervailing facts or justifiable inferences from the facts presented. *Id.* A mere assertion that an issue exists does not suffice; "general allegations and legal argument do not constitute evidence of disputed issues of material fact." *Id.* The trial court must draw every possible inference in favor of the nonmoving party and may grant the motion only if the facts are so crystallized that nothing remains but questions of law. *Convergent Techs., Inc. v. Stone*, 257 So. 3d 161, 166 (Fla. 1st DCA 2018). An order granting summary judgment is reviewed *de novo*. *Id.*

4

Likewise, an issue of statutory interpretation is reviewed *de novo*. *Whitney Bank v. Grant*, 223 So. 3d 476, 479 (Fla. 1st DCA 2017). The polestar of statutory interpretation is legislative intent, which is to be determined by first looking at the actual language used in the statute. *Searcy, Denney, Scarola, Barnhart & Shipley v. State*, 209 So. 3d 1181, 1189 (Fla. 2017). Where the Legislature did not define the words in the statute, the language is to be given its plain and ordinary meaning, which may be derived from a dictionary. *Debaun v. State*, 213 So. 3d 747, 751 (Fla. 2017). If the statutory language is clear and unambiguous, the court may not resort to the rules of statutory construction and the statute must be given its plain and obvious meaning, unless it would lead to an unreasonable result or a result clearly contrary to legislative intent. *Searcy, Denney, Scarola, Barnhart & Shipley,* 209 So. 3d at 1189 (explaining that the court must give effect to all parts of the statute and avoid readings that would render a part thereof meaningless, and the court may not construe a statute in a way that would extend, modify, or limit its express terms or its reasonable or obvious implications).

Section 95.11(3)(c), Florida Statutes (2016), provides in pertinent part as follows:

> An action founded on the design, planning, or construction of an improvement to real property . . . must be commenced within 10 years after the date of actual possession by the owner, the date of the issuance of a certificate of occupancy, the date of abandonment of construction if not completed, or the date of completion or termination of the contract between the professional engineer, registered architect, or licensed contractor and his or her employer, whichever date is latest.[2]

---

[2] The current version of the statute has the following additional provisions:

> With respect to actions founded on the design, planning, or construction of an improvement to real property, if such construction is performed pursuant to a duly issued building permit and if a local enforcement agency, state enforcement agency, or special inspector, as those terms

5

The legislative intent behind section 95.11(3)(c) was to protect engineers, architects, and contractors from stale claims. *Snyder v. Wernecke*, 813 So. 2d 213, 216 (Fla. 4th DCA 2002).

As such, the applicability of section 95.11(3)(c) turns on whether Appellant's action is founded on the "construction of an improvement to real property." We refer to the dictionary to ascertain the plain and ordinary meaning of the words "construction" and "improvement" because the Legislature did not define them. "Construction" is defined as "[t]he act of building by combining or arranging parts or elements; the thing so built." *Construction*, BLACK'S LAW DICTIONARY (11th ed. 2019). "Improvement" is defined as "[a]n addition to property, usu. real estate, whether permanent or not; esp., one that increases its value or utility or that enhances its appearance." *Improvement*, BLACK'S LAW DICTIONARY (11th ed. 2019).[3] *Cf. Hillsboro Island House Condo. Apartments, Inc. v. Town of Hillsboro Beach*, 263 So. 2d 209, 213 (Fla. 1972) (finding that beach erosion projects were "capital improvements" for the purpose of the town charter and relying on the fourth edition of Black's Law Dictionary defining "improvement" as "[a] valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more

---

are defined in s. 553.71, has issued a final certificate of occupancy or certificate of completion, then as to the construction which is within the scope of such building permit and certificate, the correction of defects to completed work or repair of completed work, whether performed under warranty or otherwise, does not extend the period of time within which an action must be commenced. Completion of the contract means the later of the date of final performance of all the contracted services or the date that final payment for such services becomes due without regard to the date final payment is made.

§ 95.11(3)(c), Fla. Stat. (2018).

[3] These terms were defined in the same manner in the previous edition. *See Construction*; *Improvement*, BLACK'S LAW DICTIONARY (10th ed. 2014).

than mere repairs or replacement of waste, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes").

Under the current definition of "improvement," the attic ladder need not be permanent and is not required to increase the value and/or utility of the property. *See Improvement*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("An addition to property, usu. real estate, whether permanent or not; esp., one that increases its value or utility or that enhances its appearance."). The attic ladder is unquestionably an addition to real property, and it provides added utility. While the attic could be accessed absent the pull-down stairs with a household ladder, the pull-down stairs provide convenience as they obliviate the need to have a standalone ladder tall enough for attic access that one then has to carry to and properly place under the attic opening. Nothing in the statutory language or dictionary definition requires the addition to significantly increase the value or utility of the property or to be essential to the property. Given such, the attic ladder meets the current definition of improvement.

We note that the attic ladder also meets the prior definition of improvement because it is an addition to property, it amounts to more than mere repair or replacement of waste, it cost labor and capital given that it required installation and cost $249, and we cannot conceive of a reason why the original owners would have opted to pay for it other than to intend to enhance the value or utility of the property. *See Improvement*, BLACK'S LAW DICTIONARY (4th ed. 1969) ("A valuable addition made to property (usually real estate) or an amelioration in its condition, amounting to more than mere repairs or replacement of waste, costing labor or capital, and intended to enhance its value, beauty or utility or to adapt it for new or further purposes.").

Case law supports our conclusion that the attic ladder constitutes improvement to real property. For example, in *Plaza v. Fisher Development, Inc.*, 971 So. 2d 918, 924 (Fla. 3d DCA 2007), the Third District concluded that the store's conveyor system was a structural improvement to real property, not a product to which strict liability would apply. The court noted that the conveyor system was installed when the store was being built

7

and reasoned that the conveyor is "'an integral part of' Pottery Barn's operation, in that the subject conveyor allowed items sold to customers to travel easily from the second floor storage area to the first floor retail area, and the conveyor system is affixed to the real property, thereby adding value to the property." *Id.*; *see also Simmons v. Rave Motion Pictures Pensacola, L.L.C.*, 197 So. 3d 644, 645, 647 (Fla. 1st DCA 2016) (affirming the judgment against the appellant, who was injured when a movie theater seat broke underneath him due to a failure in the welding in its bottom, upon concluding that the seating system was a structural improvement to real property, not a product, because "[the appellees] are not the manufacturer of the theater seating system. There is also evidence that the seating system is an integral part of the movie theatre's operation, as it was installed as part of the construction of the theater, and the entire seating system was bolted to the floor. Moreover, . . . there is no evidence that either the seat bottom or, more importantly, the seating system could be disassembled and resold."); *Bernard Schoninger Shopping Ctrs., Ltd. v. J.P.S. Elastomerics, Corp.*, 102 F.3d 1173, 1175 (11th Cir. 1997) (finding section 95.11(3)(c) applicable to the appellant's claims stemming from a leaky roof the appellee had installed because "[t]he installation of over 100,000 square feet of membrane and fiberboard [on top of the existing roof] at a cost of tens of thousands of dollars is a 'valuable addition' to the Kmart building, and it therefore qualifies as an 'improvement'" (citation omitted)). *Cf. Dominguez v. Hayward Indus., Inc.*, 201 So. 3d 100 (Fla. 3d DCA 2015) (concluding that a pool filter, which is a component part of the swimming pool, does not constitute an improvement to real property under section 95.031(2)(b), Florida Statutes, which sets forth a statute of repose for products liability claims and exempts "improvements to real property, including elevators and escalators").

In *Collins v. Trinity Industries, Inc.*, 861 F.2d 1364, 1364-65 (5th Cir. 1988), the Fifth Circuit determined that the appellant's claims were barred by the applicable statute of limitations, which applied to claims "arising out of the deficiency in the design, planning, supervision or observation of construction, or construction of an improvement to real property," because the caged ladder from which he fell at the electrical generating facility where he worked was an improvement to real property. The court

8

noted that the ladder was field-bolted or welded to the structure, and it "was designed as part of the overall project and was used like a stair or elevator for ordinary movement around the plant." *Id.* at 1365. The court reasoned:

> [T]he term improvement must be given its customary meaning. Common definitions of the term generally refer to a permanent addition that increases the value of the property and makes it more useful. . . . The caged ladder in issue was an integral part of the building, providing a means of moving from one level to another. The ladder was permanent affixed although, as the Mississippi Supreme Court held, that feature is not required. The ladder also added value to the refinery.

*Id.*; *see also Tr. Co. Bank v. U.S. Gypsum Co.*, 950 F.2d 1144, 1152 (5th Cir. 1992) (finding that "'asbestos-containing' fireproofing materials applied to the steel support structure and structural ceiling of the bank building" are improvements to real property because "[t]here is little doubt that the fireproofing materials in this case increased the value of the bank building and made it more useful").

Similarly, in *Diana v. Russo Development Corporation*, 799 A.2d 689, 691 (N.J. Super. Ct. App. Div. 2002), the court held that "a fixed vertical steel ladder attached to a concrete block wall leading to a [] roof hatch" constituted an improvement to real property for the purposes of the statute of repose. After noting that the hatch and ladder constituted a single system, were incorporated into the building, and served no purpose other than to provide access to the building's roof and that the fact that it was a mass-produced item did not render the statute of repose inapplicable because "[m]uch construction in a home involves so called 'mass-produced items,'" the court explained:

> The hatch and ladder system appears to have been installed during the construction of the building and was not added later. The system provides a means of moving from the leased space to the roof where the air conditioning and heating equipment had been installed. . . .

Hatch covers have also been found to be improvements to real property where they were designed to make the property more useful . . . .

While the ladder and hatch system could be removed from the wall and roof relatively easily, there was no indication that the structure was not designed to be a permanent feature of the leased warehouse space. Today, very few structures can be considered permanent, in the sense that the structure cannot be removed. . . .

Plaintiff argues that there was no proof that the hatch and ladder would increase the property's tax assessment value . . . . However, value is not an exact science but rather relative. Here, the claimed improvement must create value to someone utilizing the particular improvement. It need not in all cases affect the tax assessment value. To us, it is not significant that a ladder could easily reach the roof from outside this two-story structure. For anyone who must be able to ascend the roof in all types of weather conditions, the inside ladder and hatch would constitute some value and enhance the property from the user's perspective.

Clearly, labor and money were needed to install this feature, which was neither a repair nor a replacement. The record reflects that the roof hatch cost $350 in 1985 and after the accident to correct the backward roof hatch alignment the cost was $250.

Thus, we conclude that the ladder and hatch system enhanced the use of the property and cost labor and money to build. This feature was part of the original property and did not constitute a repair or replacement. It also appears to be a permanent feature of the building and adds some value to the property.

*Id.* at 693-96; *see also Cherilus v. Fed. Exp.*, 87 A.3d 269, 278 (N.J. Super. Ct. App. Div. 2014) (finding that a torklift that "facilitated movement of cargo containers and enhanced the functioning of the warehouse facility," "was designed to be installed as an integral feature of the property," and "was intended to be a permanent

10

fixture of the building" constituted an improvement to real property); *Garrett v. J.D. Specialties, Inc.*, 2:09-CV-195, 2010 WL 4791885, at *4 (E.D. Tenn. Nov. 18, 2010) (concluding that the ladder that was attached to the outside of the building and provided access to the roof was an improvement to real property); *Homrighausen by Homrighausen v. Westinghouse Elec. Corp.*, 832 F. Supp. 903, 906 (E.D. Pa. 1993) (finding that escalators are improvements to real property because other forms of vertical transportation, such as elevators and ski lifts, have been deemed improvements and "[l]ike an elevator, an escalator's purpose is to provide effortless access between floors of the building. As such, it is a valuable addition to the building in which it is attached.").

Like the items in the foregoing cases, the attic ladder at issue here was installed as part of the construction of the home, required labor and money, made the property more useful/valuable in that it provides a more convenient means of access to another level, was not mere repair or replacement, and was affixed to the attic, making it an integral part of the home. Having concluded that the attic ladder constitutes an improvement to real property, the question remains whether Appellant's claim arises from the construction of that improvement.

It is undisputed that the attic ladder was pre-assembled and Appellee's only involvement with the ladder was its installation. Although Appellee did not construct the ladder itself, we find that the action is founded on the construction of improvement to real property because Appellant's claim is that Appellee negligently failed to ensure the secure installation of the ladder with the proper hardware (not that the ladder itself was defective). That is, the action is based on Appellee's act of building by combining the attic ladder with the attic, which it undisputedly constructed. *See Construction*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The act of building by combining or arranging parts or elements; the thing so built."). Therefore, we conclude that Appellant's action is founded on the construction of improvement to real property, rendering section 95.11(3)(c) applicable.

Lastly, we must determine whether the ten-year statute of repose of section 95.11(3)(c) had run. The statute requires the action to be commenced within ten years after the date of: (1)

11

actual possession by the owner, (2) issuance of a certificate of occupancy, (3) abandonment of the construction if not completed, or (4) completion or termination of the contract, whichever is latest. § 95.11(3)(c), Fla. Stat. Appellant does not dispute that the original owners took possession of the home on May 7, 2004, as reflected by the warranty deed, that the certificate of occupancy was issued on April 30, 2004, and that the construction was not abandoned. The record evidence shows that the attic ladder was a selected option for the construction of the home and the certificate of occupancy was issued and the home was conveyed by May 7, 2004. Appellant conceded that the summary judgment evidence indicated that the contract had been completed, and his attorney's mere assertion that "sometimes builders have to come back out and do things that they forgot to do as part of that contract" was insufficient to demonstrate the existence of a disputed issue of fact. As such, the record establishes that the contract was completed by May 7, 2004. Thus, the ten-year statute of repose ran on May 7, 2014, rendering Appellant's amended complaint time barred.

## CONCLUSION

For the foregoing reasons, we hold that the statute of repose of section 95.11(3)(c) applies and bars Appellant's claim. Therefore, we affirm the final summary judgment.

AFFIRMED.

OSTERHAUS and M.K. THOMAS, JJ., concur.

_____

***Not final until disposition of any timely and authorized motion under Fla. R. App. P. 9.330 or 9.331.***

_____

Christopher W. Hewett of Law Office of Nooney & Roberts, Jacksonville, for Appellant.

J. Logan Murphy, Marie A. Borland, and J. Rocco Cafaro of Hill, Ward & Henderson, P.A., Tampa, for Appellee.